IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL ACTION |
| | : |
| v. | : |
| | : |
| JAMES F. LYNCH | : NO. 07-431-01 |
| JAMES F. CAMPENELLA | : -02 |

**DuBOIS, J.**                                                                August 31, 2011

# M E M O R A N D U M

**I.     INTRODUCTION**

In 2007, James Lynch and James Campenella (collectively "defendants") pleaded guilty before the Honorable James T. Giles to conspiracy to commit honest services fraud in violation of 18 U.S.C. § 371.  Those charges arose out of an undisclosed payment of money from Campenella, a real estate developer, to Lynch, a real estate tax assessor for the City of Philadelphia.  Judge Giles sentenced Lynch to three years probation and a $25,000 fine and Campenella to five years probation and a $250,000 fine.  Defendants now seek collateral relief, arguing that the theory of honest services fraud to which they pleaded guilty is no longer a crime under the Supreme Court decision in United States v. Skilling, 561 U.S. ___, 130 S. Ct. 2896 (2010).  In Skilling, the Supreme Court confined honest services fraud to its "solid core" of bribery and kickbacks and ruled that, without more, an undisclosed conflict of interest does not give rise to criminal liability.  Id. at 2931-32.

1

## II.   Factual Background

On July 30, 2007, the Government filed a one-count Information charging Lynch and Campenella with conspiracy to commit honest services fraud. The Information alleges the following series of events:

(1) Sometime in early 2005, Campenella asked Lynch to help him lower the assessed value of the property at 1101-13 Locust Street. In June 2005, Lynch submitted a request to the Philadelphia Board of Revision of Taxes that the assessed value of the property be lowered from $4,600,000 to $1,600,000. (Information, Ex. A to Lynch's Suppl. Submission in Supp. of Mot. to Vacate at 8.)

(2) In August 2005, Campenella asked Lynch to help him resolve a delinquent tax issue concerning 2500 Mifflin Street. In October 2005, Lynch contacted the City of Philadelphia Law Department ("the Law Department") and stated that the tax assessment for that property was incorrect and that the tax delinquency should be deleted. In September 2006, Lynch informed the Law Department that he had issued certifications to have the delinquency for 2500 Mifflin Street removed. (Id. at 6-7.)

(3) In August 2005, Campenella asked Lynch to help him lower the assessed value of 323-27 N. 13th St. In late October 2005, Lynch submitted a request to the Philadelphia Board of Revision of Taxes that the assessed value of the property be lowered from $3,000,000 to $1,600,000. (Id. at 7.)

(4) In November 2005, Campenella gave Lynch $20,000 in cash which had been drawn from the account of one of his real estate partnerships. (Id. at 5.) Lynch failed to disclose this financial relationship or to recuse himself from matters affecting Campenella and his businesses. (Id.)

(5) In February 2006, Campenella was notified that the Law Department had filed a lawsuit relating to the tax assessment for a property at 5201 Old York Road. In April 2006, Campenella asked Lynch for help with resolving this. On April 24, 2006, Campenella sent an email to his lawyers stating, "The matter is resolved." (Id. at 8-9.)

Both defendants admitted guilt to honest services fraud based on an undisclosed conflict of interest. During his plea colloquy, Campenella maintained that he gave Lynch the $20,000 to thank him for his prior help and without any intent to influence Lynch's future conduct. (Campenella Change of Plea Trans., Ex. C to Campenella's Motion at 27-36.) At his change-of-

plea hearing, Lynch repeatedly denied that he was influenced by the money or that any of his decisions were based on anything other than municipal policy. (See, e.g., Lynch, Change of Plea Trans., Ex. C. to Lynch's Suppl. Submission in Supp. of Mot. to Vacate at 31.)

The Government admitted at Lynch's change of plea hearing that Lynch neither solicited the money from Campenella nor expected to receive it. (Id. at 23.) Lynch maintained further that he was not aware that the envelope Campenella gave him contained money until several hours after it was given to him. (Lynch, Sentencing Trans. Ex. D. to Suppl. Submission in Supp. of Mot. to Vacate at 16-17). Judge Giles accepted both guilty pleas on the basis of an undisclosed-conflict-of-interest theory of honest services fraud. (See id. at 37-40; Campenella Change of Plea Trans., Ex. C. to Campenella's Motion at 27-29.) Neither defendant challenged his conviction until the instant filings.

On December 22, 2010, Lynch filed a pro se Motion to Vacate Judgment under 28 U.S.C. § 2255, And In The Alternative For A Writ of Coram Nobis under 28 U.S.C. § 1651(a). (Document No. 47.) The same day, the Court issued an order appointing counsel. On January 31, 2011, Lynch filed a counseled Supplemental Submission in Support of Motion to Vacate. (Document No. 55.) Thereafter, the Government filed a response (Document No. 56, filed February 3, 2011), and Lynch filed a reply (Document No. 61, filed April 14, 2011). Supplemental submissions addressing United States v. Panarella, CR No. 00-655, 2011 U.S. Dist. LEXIS 84102 (E.D. Pa. July 29, 2011), were filed in August 2011. (Documents No. 70 and 71.)

Campenella filed a Motion to Vacate Conviction and Set Aside Sentence under 28 U.S.C. § 2255 on May 5, 2011. The Government filed a response on May 24, 2011 (Document No. 64); Campenella filed a reply on June 12, 2011 (Document No. 67).

3

The motions are fully briefed and ripe for review.

## III.   DISCUSSION

Lynch seeks relief under 28 U.S.C. § 2255 or, in the alternative, by writ of error coram nobis.  Lynch is not eligible for relief under § 2255 because, while he is still paying his fine, he is no longer on probation.  See Obado v. New Jersey, 328 F.3d 716 (3d Cir. 2003) (holding that payment of a fine, without more, does not satisfy the custody requirement of the federal habeas corpus statutes).   Thus the Court will treat his motion as one seeking a writ of error coram nobis. Campenella, whose probationary sentence is scheduled to end in 2013, properly seeks relief under 28 U.S.C. § 2255.

The main issue argued in the briefs concerns whether defendants' current arguments are procedurally defaulted and, if so, what effect this has on the pending motions.  The Court will address the question of procedural default first and then proceed to consider defendants' motions on the merits.

The Court concludes that defendants' arguments are procedurally defaulted but that defendants are not required to demonstrate actual innocence of honest services fraud because the information charging them did not properly charge any valid theories of honest services fraud. Considering their arguments on the merits, the Court concludes that defendants are entitled to collateral relief because they stand convicted of conduct that is no longer a crime.  Thus, Lynch's alternative motion for a writ of error coram nobis is granted, and Campenella's § 2255 motion is granted.  Lynch's § 2255 motion is dismissed without prejudice.

### A.   Procedural Default and Bousley

The Court concludes that because neither Lynch nor Campenella appealed their convictions, their current arguments are procedurally defaulted.  In United States v. Bousley, the

4

Supreme Court held that, where a petitioner fails to challenge the constitutionality of a criminal statute on direct appeal, his argument is procedurally defaulted and he can only raise it in a subsequent habeas petition by showing either cause and prejudice for the failure to appeal or actual innocence of the crime of conviction. 523 U.S. 614, 622 (1998). The first question the Court must address is whether the rule established in Bousley applies to a petition for writ of error coram nobis. The Court concludes that it does and that both petitioners' claims are procedurally defaulted. Thus Lynch's alternative motion for writ of error coram nobis is granted, and Campenella's § 2255 motion is granted.

        1.  *Whether Bousley Applies to a Petition for Writ of Error Coram Nobis*

Lynch contends that the procedural default rules do not apply in the context of coram nobis. The Court rejects this argument. While most of the cases addressing procedural default are habeas cases, the logic of the procedural default rule applies with even greater force in the context of coram nobis, because coram nobis is a more limited remedy. See Bousley, 523 U.S. at 621 ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.") (emphasis added); United States v. Frady, 456 U.S. 152, 182 (1982) ("Section 2255 was intended to be in the nature of, but much broader than, the ancient writ of coram nobis."); United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989) ("[The standard under coram nobis] is even more stringent than that on a petitioner seeking habeas corpus relief under § 2255").[1]  Because coram nobis offers a narrower remedy than that

---

[1] A finding of procedural default made applicable to a writ of error coram nobis requires a petitioner to prove cause and prejudice or actual innocence. With respect to actual innocence, Lynch cites a pre-Bousley case, In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997), for the proposition that actual innocence is not required outside the context of § 2255. That case concerned a petitioner who had filed a § 2255 petition challenging his conviction under 18 U.S.C. § 924(c)(1)

provided by § 2255, the Court concludes that the procedural default rules explicated in Bousley apply to a motion for a writ of error coram nobis.

> 2. *Whether Petitioners Can Show Cause and Prejudice for Their Failure to Appeal or Actual Innocence of the Crime of Charged*

Because defendants failed to challenge the constitutionality of an undisclosed-conflict-of-interest theory on appeal, their claims are procedurally defaulted unless they show either cause and prejudice excusing that default or actual innocence of the crime of conviction. Bousley, 523 U.S. at 622. Both defendants argue that they can show cause and prejudice. Specifically, they contend that, had they appealed their convictions before the Supreme Court's decision in Skilling, their arguments would have been futile because the Third Circuit had previously upheld the constitutionality of the undisclosed-conflict-of-interest theory of honest services fraud in United States v. Panarella, 277 F.3d 678, 694 (3d Cir. 2002). Contrary to defendants' arguments, however, this kind of futility does not constitute cause to excuse their failure to appeal. Bousley, 523 U.S. at 623 ("[F]utility cannot constitute cause if it means simply that a claim was

---

before the Supreme Court limited the scope of that statute in Bailey v. United States, 516 U.S. 137 (1995). The Third Circuit held that a second § 2255 motion filed by Dorsainvil was subject to the second or successive habeas corpus bar of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2255(h), but that, in light of his claim of actual innocence, he was permitted to file a federal habeas corpus petition under § 2241. While the Dorsainvil court was not perfectly clear, it appears to have reserved the question of the petitioner's actual innocence for the consideration of the district court in which the § 2241 petition was to be filed. See Dorsainvil, 119 F.3d at 252 ("The question before us is not whether Dorsainvil is actually innocent of violating § 924(c)(1), but rather, whether his claim . . . is cognizable in a district court.") (citation omitted, emphasis added); see also Panarella, 2011 U.S. Dist. LEXIS 84102 at *19 ("The Court of Appeals suggested, without deciding, that the petitioner would have to establish his 'actual innocence' . . . on remand."). Thus Dorsainvil does not stand, as Lynch claims, for the proposition that actual innocence is not required outside the context of § 2255; rather, the Third Circuit suggested that the actual-innocence standard would also apply under an alternative form of collateral review, a habeas corpus petition under § 2241.

unacceptable to that particular court at that particular time.") (internal quotation marks omitted) (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)).

Because Lynch and Campenella raise claims that are procedurally defaulted and they cannot show cause and prejudice for their failure to appeal, their only means of obtaining relief is to show actual innocence of the charge of conviction. Id. at 622-23. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. at 623 (quotation marks omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency," and "in cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id. at 623-24 (quotation marks omitted). However, a petitioner's obligation to demonstrate actual innocence is limited to crimes actually charged or consciously forgone by the Government in the course of plea bargaining. See, e.g., id. at 624 (rejecting government's argument that defendant had to demonstrate actual innocence of both "using" and "carrying" a firearm where the indictment only charged using a firearm).

In this case, the threshold question with regard to actual innocence is whether Lynch and Campenella were charged with a viable theory of honest services fraud in the Information. Defendants contend that the Information only charged an undisclosed-conflict-of-interest theory. The Government maintains that, in addition to the now-void undisclosed-conflict-of-interest theory, the Information also charged a valid bribery theory. The Government contends further that defendants must prove their innocence of any viable theory of honest services fraud, even if those theories were never charged. (See Gov't's Resp. to Lynch at 25.)

7

The Court rejects the Government's argument that defendants must prove their actual innocence of any viable theory of honest services fraud regardless of whether charged.  See Bousley, 523 U.S. at 624; United States v. Duarte-Rosas, 221 Fed. App'x 521, 522 (9th Cir. 2007) (finding that a district court erred by requiring a petitioner to show actual innocence of other charges the Government could have brought); Panarella, 2011 U.S. Dist. LEXIS 84102, at *17.  Implicit in these cases is the proposition that where an indictment fails to allege any criminal conduct, a petitioner is excused from the showing of actual innocence.  Thus, the only question remaining is whether the Information charged the crime of bribery in addition to the now-void undisclosed conflict of interest charge.

> Under Third Circuit law, an indictment is sufficient if it:
>
>> "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Vitillo, 490 F.3d 314 (3d Cir. 2007) (internal quotation marks omitted). Moreover, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989).

United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007).  While the matters at issue in this case involve an information rather than a formal indictment, the parties agree that the standard is the same as that for an indictment.  (See Gov't's Resp. to Lynch at 25; Lynch Reply at 4-5; Campenella Motion to Vacate at 5-7.)

The Third Circuit discussed the specific requirements for charging a bribery theory of honest services fraud in United States v. Kemp.  500 F.3d at 280.  In Kemp, the Court of Appeals found that an indictment was sufficient to charge a bribery theory because it (1) "refers to 'the

8

benefits that [defendant payors] extended to Kemp [the government employee] with the intent to influence KEMP's actions'" and (2) "charges that '[defendant payors] provided benefits to Kemp in the form of otherwise unavailable loans in exchange for favorable decisions by KEMP as Treasurer of Philadelphia.'" Id. at 280-81 (quoting indictment).  Thus, the Kemp court ruled that the indictment in that case was sufficient based on language indicating both an intent to influence official actions and an intent to exchange a financial benefit for favorable action by the government official.

The Kemp court went on to clarify that the critical element of a bribery charge is the exchange language, distinguishing between a bribe, which necessarily involves a quid pro quo, and a mere attempt to curry favor, which does not.  Id. at 282.  The Court ruled that in proving the existence of bribes, "the government need not prove that each gift was provided with the intent to prompt a specific act" and that a bribe occurs where "payments [are] made, with the intent to retain the official's services on an 'as needed' basis, so that where the opportunity presents itself the official will take specified actions on the payor's behalf."  Id. at 282 (citations omitted) (emphasis added).  However, the court contrasted this from noncriminal "gratuities" for past or future actions and "noncriminal gifts extended to a public official merely to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future."  Id. at 281 (quotation marks omitted) (emphasis added).  The critical holding of Kemp is that bribery requires a specific intent to perform a quid pro quo.  Id.  While this intended exchange need not be made explicit between the parties, see United States v. Antico, 275 F.3d 245, 257 (3d Cir. 2001), the Government must allege and prove some facts from which a jury can infer that there was a specific intent to perform an exchange.  See, e.g., United States v. Mariano, 316 F. App'x 99, 102 (3d Cir. 2008).

Whereas the indictment in the Kemp case included both "influence" language and "exchange" language, Kemp, 500 F.3d at 280-81, the Information in this case only includes "influence" language. However, the Government contends that the Information properly charges a bribery theory notwithstanding the fact that it does not allege an exchange, because the word "bribes" appears in the Information. The Court rejects this argument and concludes that the information does not charge honest services fraud based on bribery.

In arguing for the sufficiency of the Information, the Government points to the following language:

> As such a public employee, Defendant JAMES F. LYNCH . . . owed a duty to . . . (d) refrain from soliciting or accepting any item of monetary value, including gifts and loans, with the intent to be influenced or rewarded, from any person seeking official action from, doing business with, or whose interests may be affected by the performance or nonperformance of his duties. . . [and] in violation of each aspect of his duties listed above, defendant JAMES F. LYNCH's actions . . . were unlawfully rewarded and influenced by bribes, rewards, gifts, loans, and other benefits he received from defendant JAMES F. CAMPENELLA, all of which LYNCH failed to disclose.

(Information at 1-2.)

There are several problems with the Government's reliance on this language. First, read in the context of surrounding paragraphs, the thrust of the sentence that includes the word "bribes" is the final clause – "all of which LYNCH failed to disclose" – which charges an undisclosed conflict of interest based on Lynch's failure to disclose the payment.[2] Second, even setting aside the final clause, the verbs in that sentence – "influenced" and "rewarded" – correspond with what the Kemp court called "a noncriminal gift extended to a public official merely to build a reservoir of goodwill that might ultimately affect one or more of a multitude of

---

[2] The Information specifically alleges a failure to disclose no fewer than seven times. (See Information at 1-2, 4-6.)

unspecified acts, now and in the future." Kemp, 500 F.3d at 281.[3]  This inadequacy is heightened by the fact that the sentence is constructed in the passive voice and fails to allege any intent on the part of either defendant with respect to specific actions at the time of the improper payment.  Third, the remainder of the Information is not consistent with an intent to charge anything other than honest services fraud based on an undisclosed conflict of interest.  Most notably, the fact sections do not allege that Lynch took any action in expectation of Campenella's payment or that the parties ever intended to exchange the monetary payment for government services.

    Moreover, this reading of the Information as only charging an undisclosed conflict of interest is supported by the Government's statements during the change-of-plea hearings.  During both change-of-plea hearings the Government corrected the Court by clarifying that the crime at issue was an undisclosed conflict of interest, rather than bribery.  (See Lynch Trans. of Change of Plea Hearing, ex. C, to Suppl. Submission in Supp. of Mot. to Vacate at 32; Campenella, Trans. of Change of Plea Hearing, ex. C, to Motion to Vacate, at 28, 32.)  At no point during the change-of-plea hearings or in its guilty plea memoranda did the Government mention a quid pro quo bribery theory.

---

[3] The Court notes that the legal significance of "influence" is not entirely clear from Kemp.  For example, the Third Circuit states that "bribery requires a quid pro quo, which includes an 'intent to influence an official act or to be influenced in an official act.'"  Kemp, 500 F.3d at 281 (quoting United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404 (1999)).  The Court concludes, however, that the distinctions drawn in Kemp between a criminal quid pro quo bribe and, for example, "a noncriminal gift extended to a public official merely to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future," Kemp, 500 F.3d at 281, are only workable if the phrase "influence an official act" in the first sentence is read to require something more specific than a generalized understanding of possible preferential treatment.  What Kemp emphasizes repeatedly as the essence of bribery is the specific intent to perform a quid pro quo.  See id.; see also United States v. Bryant, No. 09-3243 2011 U.S. App. LEXIS 17753, at *14 (3d Cir. Aug. 25, 2011) (emphasizing exchange requirement).  This the Government does not allege.

For all the above reasons, the Court concludes that the Information in this case was not "sufficient [to] apprise[] the defendant[s] of what [they] must be prepared to meet" with respect to a bribery theory and therefore did not adequately charge such a theory. See Kemp, 500 F.3d at 280. Because defendants cannot be required to demonstrate their actual innocence of a crime that was never charged, see Bousley, 523 U.S. at 624, the Court can proceed to address their arguments on the merits. The Court will first address Lynch's motion for a writ of error coram nobis and then Campenella's motion for relief under 28 U.S.C. § 2255.

### B. Lynch's Petition for a Writ of Error Coram Nobis

#### 1. *Legal Standard*

The writ of error coram nobis is available in federal courts in criminal matters under the All Writs Act, 21 U.S.C. § 1651(a). It is used to attack allegedly invalid convictions in federal court that have continuing consequences but where the individual is no longer in custody. United States v. Morgan, 346 U.S. 502 (1954); United States v. Stoneman, 870 F.2d 102 (3d Cir. 1989). An error that could be remedied by a new trial, such as an error in jury instructions, does not normally come within the scope of the writ. United States v. Gross, 614 F.2d 365, 368 (3d Cir. 1980), cert denied, 447 U.S. 925 (1980). Earlier proceedings are presumptively correct, and the petitioner has the burden to show otherwise. United States v. Sammy Cariola, 323 F.2d 180, 184 (3d Cir. 1963).

Coram nobis is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope. Id. Coram nobis relief is limited to correcting errors "of the most fundamental character." Morgan, 346 U.S. at 512. Because of the interest in finality of judgments, the standard for a successful collateral attack on a conviction under coram nobis is more stringent than the standard applicable on a direct appeal. United States v. Gross, 614 F.2d 365, 368 (3d

12

Cir. 1980). It is even more stringent than the burden on a petitioner seeking habeas relief. Stoneman, 870 F.2d at 106 (citing United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988)).

The Third Circuit has set the following requirements for the availability of coram nobis relief: (1) the petitioner must demonstrate continuing consequences of the conviction; (2) there must have been no remedy at the time of trial; (3) there must exist "sound reasons" for failing to seek relief earlier; and (4) there must be a fundamental error "go[ing] to the jurisdiction of the trial court, thus rendering the trial itself invalid." Stoneman, 870 F.2d at 105-06.

2. *Discussion*

The Court will address the four requirements discussed in Stoneman in order. In sum, it concludes that Lynch has met all four requirements and is entitled to coram nobis relief.

The continuing consequences prong is essentially beyond dispute. Lynch was sentenced to three years' probation and a $25,000 fine. While Lynch has served his term of probation, he continues to make payments on his fine in the amount of $100 per month. The Government concedes that continued payment of a fine is a sufficient collateral consequence of conviction to support a petition for writ of error coram nobis. (Gov's Resp. to Def.'s Mot. for Writ of Error Coram Nobis, at 14-15 (citing United States v. Michaud, 925 F.3d 37, 39 n.1 (1st Cir. 1991).) The Court agrees and concludes that Lynch has satisfied the continuing consequences prong.

It is also clear that the second and third prongs are satisfied because Lynch had no remedy at the time of trial and could not have sought relief earlier. Prior to the Supreme Court ruling in Skilling, this Circuit recognized undisclosed conflict of interest as a valid basis for an honest services fraud conviction. See United States v. Panarella, 277 F.3d 678 (3d Cir. 2002). The Court thus concludes that Lynch could not have sought relief earlier. See, e.g., United

States v. Mandel, 862 F.2d 1067, 1077 (4th Cir. 1988); Panarella, 2011 U.S. Dist. LEXIS 84102, at *30.

Finally, the Court concludes that Lynch has demonstrated fundamental error warranting coram nobis relief. The transcript of Lynch's plea hearing makes it clear that the Court accepted his guilty plea to the crime of honest services fraud based on an undisclosed conflict of interest. (See Lynch, Trans. of Plea Hearing at 37-40.) The Supreme Court has since ruled in Skilling that an undisclosed conflict of interest is not a crime. As such, Lynch stands convicted of conduct that is not criminal. Courts have consistently stated that such a scenario constitutes fundamental error warranting the remedy of coram nobis. See, e.g., Stoneman, 870 F.2d at 105 (Where a defendant is convicted and punished "for an act that the law does not make criminal[,] there can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' . . . that justif[ies] collateral relief.") (quoting Davis v. United States, 417 U.S. 333, 346 (1974)); United States v. Mandel, 862 F.2d 1067, 1074-75 (4th Cir. 1988); Panarella, 2011 U.S. Dist. LEXIS 84102, at *16.

Lynch has satisfied the four requirements for issuance of a write of error coram nobis. Thus his motion for a writ of error coram nobis is granted.

### C. Campenella's Motion for Relief Under 28 U.S.C. § 2255

Like Lynch, Campenella pled guilty to the crime of honest services fraud based on an undisclosed conflict of interest. (See Campenella, Trans. of Plea Hearing at 27-29.) Campenella thus stands convicted of, and is currently serving a probationary sentence for, conduct that is not criminal. This is, beyond question, a situation that justifies relief under § 2255. Davis, 417 U.S. at 346. Thus the Court grants Campenella's motion to vacate his conviction and sentence under 28 U.S.C. § 2255.

## IV.   CONCLUSION

The Court concludes that both defendants were convicted of conduct that is no longer a crime and that, as a result, they are entitled to collateral relief. Lynch's alternative motion for a writ of error coram nobis is granted, and Campenella's motion for relief under 28 U.S.C. § 2255 is granted. Lynch's § 2255 motion is dismissed without prejudice. Appropriate orders follow.