IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| JAMES F. LYNCH | : | NO. 07-431-01 |

DuBois, J.                                                                                                   December 18, 2012

**MEMORANDUM**

**I.    INTRODUCTION**

James F. Lynch pleaded guilty to conspiracy to commit honest services fraud in violation of 18 U.S.C. § 371 based on his failure to disclose a conflict of interest.  He was sentenced to three years' probation, a $25,000 fine, and a $100 special assessment.  In a related administrative proceeding, Lynch forfeited $19,400 as criminal proceeds.  After the Supreme Court ruled in United States v. Skilling, 130 S. Ct. 2896 (2010) that honest services fraud did not include undisclosed conflicts of interest, this Court vacated and set aside Lynch's conviction and sentence.  Additionally, the government was ordered to repay to Lynch all sums that Lynch had paid on account of his fine and special assessment.

Presently before the Court is Lynch's motion for the return of the $19,400 he forfeited. For the reasons set forth below, the motion is denied in part and dismissed in part.

**II.   BACKGROUND**

The background of this case is set forth in detail in this Court's prior opinion and will be recited in this Memorandum only as necessary to address Lynch's motion.  See United States v. Lynch, 807 F. Supp. 2d 224 (E.D. Pa. 2011).

Lynch was a real estate tax assessor for the City of Pennsylvania.  Id. at 227.  His

criminal case arose out of interactions with co-defendant James Campenella, a real estate developer.  Id.  Lynch helped Campenella lower the assessed value of two properties and assisted him in resolving a delinquent tax issue on a third property.  Id. at 227-28.  Campenella then gave Lynch $20,000 in cash.  Id. at 228.  Lynch failed to disclose this financial relationship or to recuse himself from matters affecting Campenella and his businesses.  Id.  Campenella thereafter asked Lynch to help resolve a lawsuit over a tax assessment on a fourth property.  Id.  It appears that the lawsuit was then, in fact, resolved.  Id.

Lynch gambled with some of the $20,000.  (Sentencing Hearing, 8/17/2008 at 27-29.)  He lost $600 of it, leaving him with the $19,400 at issue in this case.  (Id.)  Lynch initially denied having any financial relationship with Campenella but later voluntarily surrendered the $19,400 in cash to the government.  (Id. at 27-28; Change of Plea Hearing, 9/14/2007 at 27.)

Lynch pleaded guilty to conspiracy to commit honest services fraud.  Lynch, 807 F. Supp. 2d at 224.  He was sentenced to three years' probation, a $25,000 fine, and a $100 special assessment.  (Lynch Judgment, Document No. 32 at 2-4.)  As part of his guilty plea agreement, he agreed "not to contest the administrative or civil forfeiture to the government" of the $19,400.  (Mot. Ex. A, Guilty Plea Agreement at 5.)  The money was later administratively forfeited, and Lynch did not challenge the forfeiture.  (See Mot. Ex. C, Declaration of Administrative Forfeiture.)

After his guilty plea, the Supreme Court decided United States v. Skilling, 130 S. Ct. 2896 (2010).  In Skilling the Supreme Court confined honest services fraud to its "solid core" of bribery and kickbacks and ruled that, without more, an undisclosed conflict of interest does not give rise to criminal liability.  Id. at 2931-32.  As a result of the Skilling decision, this Court

granted Lynch's motion for a Writ of Coram Nobis. Lynch, 807 F. Supp. 2d at 235. The Court ordered that Lynch's conviction and sentence be vacated and set aside. Id. The government was also ordered to repay to Lynch all sums that he had paid on account of his fine and special assessment. Id.

Lynch now moves for the return of the $19,400 he administratively forfeited.

### III. DISCUSSION

#### A. Jurisdiction

The Court will construe Lynch's motion under Federal Rule of Criminal Procedure 41(g) as a civil action in equity. See Arevalo v. United States, 238 Fed. App'x 869, 870 (3d Cir. 2007); United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000) (discussing former Rule 41(e)); but see United States v. Winkelman, 430 Fed. App'x 208, 210 (3d Cir. 2011) (affirming the district court's dismissal of a Rule 41(g) motion after criminal proceedings had ended without endorsing the procedure); Winkelman v. United States, No. 12-1638, 2012 WL 3679206, at *2 (3d Cir. 2012).

#### B. Statutory Framework

Lynch's $19,400 was forfeited through a civil administrative forfeiture. Unlike a criminal forfeiture which is part of a defendant's sentence, "[a]n administrative forfeiture is a summary proceeding that is conducted by the seizing agency." Mendoza v. U.S. Customs and Border Protection, No. Civ.A. 05-6017, 2006 WL 2627925, at *3 (D.N.J. Sept. 13, 2006); see also 18 U.S.C. § 982 (setting forth the procedures for criminal forfeitures). Proceeds of certain crimes are subject to civil administrative forfeiture. 18 U.S.C. § 981(a)(1).

After the government seizes property, it must send notice to all interested parties. 18

3

U.S.C. § 983(a)(1)(A)(i). The administrative forfeiture is then effected by a declaration of forfeiture, which has "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. § 1609(b).

The Civil Asset Forfeiture Reform Act ("CAFRA") sets forth the procedures to challenge an administrative forfeiture. 18 U.S.C. § 983. There are only two opportunities for such a challenge. First, after receiving notice but before the property is forfeited, a property owner may file a claim with the government. 18 U.S.C. § 983(a)(2). This initiates a set of procedures through which the government can either defend against the challenge or relinquish the property. 18 U.S.C. § 983(a). Second, after the property is forfeited, a person who did not receive proper notice may file a motion to set aside the forfeiture. 18 U.S.C. § 983(e)(1). Such a motion challenging the adequacy of the government's notice is "the exclusive remedy for seeking to set aside a declaration of forfeiture." 18 U.S.C. § 983(e)(5).

    C.    <u>Lynch's Claims</u>

Lynch concedes that he received adequate notice as required by the civil forfeiture statute and that he has "no remedy under CAFRA." (<u>See</u> Mot. at 3; Reply at 11.) Nevertheless, he asserts that the $19,400 should be returned based on two principal grounds: (a) that the forfeiture violated his procedural due process rights; and (b) that the forfeiture should be set aside as a direct or collateral consequence of his now-vacated conviction.

        (a)    <u>Procedural Due Process</u>

As noted above, a motion challenging the adequacy of the government's notice is "the exclusive remedy for seeking to set aside a declaration of forfeiture," and there is no issue of notice in this case. <u>See</u> 18 U.S.C. § 983(e)(5). The Court nevertheless will review the process

4

utilized in this case to determine whether the forfeiture comported with due process. See Webster v. Doe, 486 U.S. 592, 603 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.")

Some courts have described § 983(e)(5)'s "exclusive remedy" provision as a jurisdictional limitation. See, e.g., United States v. Tinajero-Porras, 378 Fed App'x 850, 851-52 (10th Cir. 2010); Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005). However, the Supreme Court has cautioned that courts "have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237, 1243-44 (2010). Such "drive-by jurisdictional rulings" were discouraged in Reed. Id. at 1244 (internal citations omitted). Rather, courts should apply the following test: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. Because Congress has not clearly stated that § 983(e)(5) is a jurisdictional limitation, this Court will treat the restriction as nonjurisdictional.

Lynch argues that his forfeiture of the $19,400 violated procedural due process because he did not have a "meaningful opportunity to be heard." (Mot. at 4.) The basis for this argument is that a challenge to the forfeiture would have been fruitless because, prior to Skilling, such a challenge would have had little to no chance of success. (Id.; Reply at 10.) Lynch asserts that he must have an opportunity to challenge his forfeiture now that the law has changed in his favor.

5

The Court rejects that argument.

As an administrative forfeiture has the same force and effect as a district court order, Lynch essentially argues that due process requires new interpretations of the law to be applied retroactively to even those cases in which final judgment has already been entered. However, "new legal principles, even when applied retroactively, do not apply to cases already closed." Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 758 (1995). Rather, interpretations of federal law must only be given retroactive effect to cases "still open on direct review." Harper v. Va. Dept. of Taxation, 509 U.S. 86, 97 (1993). Courts are not required, for example, to grant relief from judgment through Rule 60(b) due to a change in the law. Agostini v. Felton, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief."). Thus, Lynch's procedural due process rights were not violated because he did not have an opportunity to challenge the merits of his forfeiture after Skilling. His motion on this ground is denied.

(b) Consequence of his Conviction

Lynch also argues that his forfeiture should be set aside because it is either a direct or collateral consequence of his conviction, which has now been vacated. However, as previously discussed, a "motion" under 18 U.S.C. § 983(e) challenging the adequacy of the government's notice is the "the exclusive remedy for seeking to set side aside a declaration of forfeiture under a civil forfeiture statute." The Court concludes that the statute bars claims that are not based on either the Constitution or the adequacy of the government's notice. Thus, Lynch's claim – that his forfeiture should be set aside solely on the grounds that his conviction has been vacated – fails, and his motion on this ground is dismissed.

However, even if 18 U.S.C. § 983(e) permitted such a claim, the Court would deny Lynch's motion. In United States v. Bank of New York, decided before CAFRA was enacted, Pak Lung Wu had pleaded guilty to violating 21 U.S.C. § 857 (repealed and recodified at § 863). 14 F.3d 756, 757 (2d Cir. 1994). The statute criminalized the sale or transportation of drug paraphernalia. Id. The government commenced a civil forfeiture action against the assets in several of Wu's bank accounts on the theory that those assets were proceeds from the sale of crack vials. Id. The government and Wu eventually settled, and a consent decree was issued. Id. at 758. Pursuant to the decree, the government, inter alia, returned half the funds that had been seized. Id.

Two months after the consent decree was issued, the Second Circuit held that 21 U.S.C. § 857 did not criminalize the manufacture or sale of crack vials, and Wu's conviction was later reversed. Id. He then moved under Rule 60(b) to vacate the consent decree, which the district court denied. Id. The Second Circuit affirmed the denial of the motion, concluding that "a change in the law occurring after a settlement for a sum of money is not a basis for vacating the settlement pursuant to Rule 60(b)." Id. at 759. The Second Circuit further stated that "[a]t the time of the settlement, Wu knowingly entered into the agreement with his eyes wide open. No one entering into a settlement agreement, however, is a soothsayer. Neither party could have foreseen with any reasonable degree of certainty the turn of events. Having taken his chances, Wu cannot be heard to cry foul, and accordingly must live with his choice." Id. at 756.

Lynch's situation is materially identical to Wu's. Both forfeited property based on a criminal conviction that was later overturned. Both made a tactical decision based on the law at the time to agree to forfeit some or all of their property: Wu in his settlement and Lynch in his

guilty plea. In both cases, the property was forfeited pursuant to a legal instrument that has the force and effect of a district court order.[1] Both attempted to set aside the forfeiture after the law changed in their favor and their convictions were vacated. This Court finds the Second Circuit's reasoning in Bank of New York persuasive. The change in law based on Skilling does not entitle Lynch to vacate his administrative forfeiture. He is not entitled to the return of the $19,400.

## IV.    CONCLUSION

For the foregoing reasons, Lynch's motion for the return of property is denied in part and dismissed in part. An appropriate order follows.

---

[1] Wu forfeited his assets through a consent decree issued by the district court. Bank of New York, 14 F.3d at 758. Lynch's $19,400 was forfeited pursuant to declaration of administrative forfeiture which has "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. § 1609(b). (See Mot. Ex. C, Declaration of Administrative Forfeiture.)